1   HANSON BRIDGETT LLP
    LAWRENCE M. CIRELLI, SBN 114710
2   lcirelli@hansonbridgett.com
    MEGAN OLIVER THOMPSON, SBN 256654
3   moliverthompson@hansonbridgett.com
    GEOFFREY R. PITTMAN, SBN 253876
4   gpittman@hansonbridgett.com
    425 Market Street, 26th Floor
5   San Francisco, California 94105
    Telephone:   (415) 777-3200
6   Facsimile:   (415) 541-9366

7   Attorneys for Defendant Blue Diamond
    Growers

8                  **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11   CYNTHIA CARDARELLI PAINTER,          Case No. 2:17-CV-02235-SVW-AJW
     individually and on behalf of other
12   members of the general public similarly  **DEFENDANT BLUE DIAMOND**
     situated,                             **GROWERS' NOTICE OF MOTION**
13                                         **AND MOTION TO DISMISS**
                                           **PLAINTIFF'S FIRST AMENDED**
14              Plaintiff,                 **COMPLAINT; MEMORANDUM**
                                           **OF POINTS AND AUTHORITIES**
15        v.

16   BLUE DIAMOND GROWERS, a               Date:  June 5, 2017
     California corporation, and DOES 1    Time: 1:30 p.m.
17   through 100, inclusive,               Courtroom: 10A

18              Defendants.                Hon. Stephen V. Wilson

19

20

21

22

23

24

25

26

27

28

13430791.4

## NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

PLEASE TAKE NOTICE that, on June 5, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom10A on the 10th Floor of the above-entitled court located at 350 W. 1st Street, Los Angeles, California 90012, Defendant Blue Diamond Growers ("Blue Diamond") will and hereby does move the Court to dismiss Plaintiff's First Amended Class Action Complaint.

This Motion seeks dismissal pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) and is made on the following grounds:

1.       Plaintiff fails to plead facts sufficient to state any of her causes of action because no reasonable consumer could plausibly be led to believe that the term "milk" in "almondmilk" somehow promises a nutritional equivalence to dairy milk.  Additionally, no reasonable consumer could be misled by the limited, factually accurate marketing statements made on Blue Diamond's website comparing the calorie and calcium content of Almond Breeze to dairy milk.

2.       By failing to identify a single Almond Breeze product that she allegedly purchased and by failing to allege any specific representations that she read or relied upon, Plaintiff's claims wholly fail to satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b).

3.       Plaintiff's claims are expressly preempted under the Federal Food, Drug & Cosmetic Act ("FDCA") because her complaint seeks to impose new and more stringent labeling requirements on almondmilk manufacturers than are required by the U.S. Food and Drug Administration ("FDA") and under the FDCA. Alternatively, Plaintiff's claims should be dismissed or stayed under the primary jurisdiction doctrine because if the appropriate product name for almondmilk is going to be changed, it should be determined in the first instance by the expert agency, the FDA.

4.       Plaintiff lacks standing to bring this suit because she has failed to plead

1  a cognizable injury and also lacks standing to seek injunctive relief because she has
2  failed to plead an intent to purchase Blue Diamond's Almond Breeze Almondmilk
3  products in the future.

4     Blue Diamond's Motion is based on this Notice of Motion and Motion, the
5  following Memorandum of Points and Authorities, all pleadings and papers on file
6  in this action, such other evidence or arguments that may be presented to the Court,
7  and such other matters of which this Court may take judicial notice.  This motion
8  was made following the conference of counsel pursuant to Civil L.R. 7-3, which
9  took place on April 10, 2017.

10
11  DATED: April 17, 2017                    HANSON BRIDGETT LLP
12
13
14                                  BY: /s/ Lawrence M. Cirelli
15                                      LAWRENCE M. CIRELLI
                                        MEGAN OLIVER THOMPSON
16                                      GEOFFREY R. PITTMAN
                                        Attorneys for Defendant Blue Diamond
17                                      Growers
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION
COMPLAINT

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF FACTS ................................................................... 2

    A.   Relevant procedural history. ..................................................... 2

    B.   Plaintiff's factual allegations and causes of action. .................. 3

III.    ARGUMENT ...................................................................................... 5

    A.   Plaintiff's UCL, FAL, and CLRA claims fail because Plaintiff has failed to plead facts sufficient to state a cause of action. ................. 5

        1.   The FAC should be dismissed as a matter of law because a reasonable consumer would not be led to believe that the term "milk" in "Almondmilk" means that Almond Breeze is nutritionally equivalent to dairy milk. ....................................... 7

        2.   The FAC should be dismissed as a matter of law because a reasonable consumer would not be misled by factually accurate comparison statements made between the calcium and calorie content of Almond Breeze and dairy milk. ................ 9

        3.   The FAC should be dismissed as a matter of law because a reasonable consumer would not be misled by website statements regarding almonds, vitamins in Almond Breeze, and statements that Almond Breeze is an alternative to dairy milk and soymilk. ........................................ 12

        4.   Blue Diamond did not have a duty to disclose each nutritional difference between Almond Breeze Almondmilk and dairy milk. ..................................................... 13

    B.   Plaintiff's causes of action are not pled with the requisite particularity under Rule 9(b). ................................................ 14

    C.   Plaintiff's claims are expressly preempted by federal law. .................. 17

    D.   The primary jurisdiction doctrine also bars Plaintiff's claims. ............ 21

    E.   Plaintiff lacks standing to bring this lawsuit and maintain her claim for injunctive relief. ....................................................... 23

IV.     CONCLUSION ................................................................................ 25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ang v. WhiteWave Foods Co.*,
   No. 13-CV-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) ................ *passim*

5

6

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ............................................................................ 23

7

8

*Bell Atlantic Corp. v. Twombly*,
   500 U.S. 554 (2007) .................................................................................... 7, 9

9

10

*Cetacean Cmty. v. Bush*,
   386 F.3d 1169 (9th Cir. 2004) ......................................................................... 23

11

12

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) .......................................................... 23

13

14

*Chae v. SLM Corp.*,
   493 F.3d 936 (9th Cir. 2010) ........................................................................... 18

15

16

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008) ................................................................... 21, 22

17

18

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ........................................................................................ 18

19

20

*Delarosa v. Boiron, Inc.*,
   No. SACV 10-1569-JST, 2012 WL 8716658 (C.D. Cal. Dec. 28, 2012) .......................................................................................................... 24

21

22

*Duran v. Creek*,
   No. 3:15-cv-05497-LB, 2016 WL 1191685 (N.D. Cal. Mar. 28, 2016) .......................................................................................................... 24

23

24

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ........................................................................ 5, 6

25

26

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ........................................................................... 23

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT

13430791.4

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) ................................................................ 5

*Gitson v. Trader Joe's Co.*,
   No. 13-CV-01333-VC, 2015 WL 9121232 (N.D. Cal. Dec. 1, 2015) ..........*passim*

*Gitson v. Trader Joe's Co.*,
   No. 13-cv-01333-WHO, 2013 WL 5513711 (N.D. Cal. Oct. 4,
   2013) ................................................................................................ 7, 9

*Gordon v. Church & Dwight Co.*,
   No. C-09-5585-PJH, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010) ................ 22

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ............................................................. 6

*Iqbal v. Ashcroft*,
   556 U.S. 662 (2009) ........................................................................ 7, 9

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................ 15, 17

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) .................................................................. 23, 24

*Lavie v. Procter & Gamble Co.*,
   105 Cal.App.4th 496 (2003) ............................................................... 5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................................... 23

*Mason v. Nature's Innovation, Inc.*,
   No. 12CV3019 BTM, 2013 WL 1969957 (S.D. Cal. May 13, 2013).............24-25

*McKinnis v. Kellogg USA*,
   No. CV-07-2611 ABC, 2007 WL 4766060 (C.D. Cal. Sept. 19,
   2007) ............................................................................................. 6

*Pom Wonderful LLC v. Coca-Cola Co.*,
   No. CV 08-06237, 2013 WL 543361 (C.D. Cal. Feb. 13, 2013) ................. 18

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984) .............................................................. 6

13430791.4

*Rojas v. General Mills, Inc.*,
    No. 12-cv-05099-WHO, 2009 WL 5568389 (N.D. Cal. Oct. 9,
    2013) ..................................................................................................... 16

*Salazar v. Honest Tea, Inc.*,
    74 F. Supp. 3d 1304, 1315 (E.D. Cal. 2014) ...................................... 23

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
    307 F.3d 775 (9th Cir. 2002) .............................................................. 21

*Thomas v. Costco Wholesale Corp.*,
    12-cv-02908 EJD, 2013 WL 1435292 (N.D. Cal. Apr. 9, 2013) ....... 16-17

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................... 14, 15, 17

*Videtto v. Kellogg USA*,
    No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086 (E.D. Cal. May
    21, 2009) ................................................................................................ 6

*Werbel ex rel. v. Pepsico, Inc.*,
    No. C 09-04456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ............ 6

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ................................................................ 5

*Wirth v. Mars, Inc.*,
    No. SA CV 15-1470-DOC, 2016 WL 471234 (S.D. Cal. Feb. 5,
    2016) ............................................................................................. 14, 24

**Statutes**

21 U.S.C. § 337 ....................................................................................... 18

21 U.S.C § 343(a). ..................................................................................... 7

21 U.S.C. § 343-1 ............................................................................... 18, 19

21 U.S.C. § 343-1(a) ................................................................................ 22

Cal. Bus. & Prof. Code §§ 17200, *et seq.*.......................................*passim*

Cal. Bus. & Prof. Code §§ 17500, *et seq.*.......................................*passim*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT

13430791.4

California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ................................................................................................*passim*

Federal Food, Drug & Cosmetic Act.................................................*passim*

Nutritional Labeling Education Act of 1990 ........................................... 18

California Sherman Food, Drug, and Cosmetic Law .................................. 1

**Other Authority**

21 C.F.R. §§ 1.1, *et seq.*..................................................................... 18

21 C.F.R. § 100.1(c) ......................................................................... 18

21 C.F.R. § 101.3 .............................................................................. 22

21 C.F.R. § 101.3(b)(1)-(3) ............................................................... 20

21 C.F.R. § 102.5(a) ......................................................................... 19

21 C.F.R. § 131.110..................................................................4, 19, 21

Federal Rule of Civil Procedure 9(b) ...........................................*passim*

Federal Rule of Civil Procedure 12(b)(1).............................................. 22

Federal Rule of Civil Procedure 12(b)(6).............................................. 6

13430791.4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Despite failing to allege that a single labeling statement, ingredient list, Nutrition Facts panel, or specific marketing claim regarding Blue Diamond Growers' ("Blue Diamond") Almond Breeze Almondmilk products is in any way false, plaintiff Cynthia Cardarelli Painter ("Plaintiff") nonetheless has brought suit challenging whether Blue Diamond's use of the common or usual name "almondmilk" runs afoul of California's consumer protection statutes, the Federal Food, Drug & Cosmetic Act ("FDCA"), U.S. Food and Drug Administration ("FDA") regulations, and California's Sherman Food, Drug, and Cosmetic Law.  At base, Plaintiff's claims amount to a specious argument that Blue Diamond somehow misled consumers into believing that its Almond Breeze products were "nutritionally equivalent" or "nutritionally superior" to cow's milk because the word "milk" is contained in the product name "almondmilk."  Plaintiff's claims are meritless.

As courts addressing nearly identical claims have previously held, "the fact that the FDA has standardized milk does not categorically preclude a company from giving any food product a name that includes the word 'milk.'"  *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 WL 9121232, at *2 (N.D. Cal. Dec. 1, 2015) ("*Gitson II*").  Further, the name "almondmilk" has been found to accurately describe the nature and content of the products, while "clearly distinguishing them from milk that is derived from dairy cows."  *Ang v. WhiteWave Foods Co.*, No. 13-CV-1953, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013).  Moreover, "it is simply implausible that a reasonable consumer would mistake a product like . . . almond milk with dairy milk from a cow" in light of the first words in the products' names (*i.e.,* almond).  *Id.*  Ignoring these clear authorities, Plaintiff maintains that consumers are still confused between dairy milk and almondmilk.  Contrary to Plaintiff's nonsensical allegations, however, each of her causes of action fails on the

-1-

following grounds.

First, Plaintiff fails to plead facts sufficient to state any of her causes of action because no reasonable consumer could plausibly be led to believe that the term "milk" in "almondmilk" somehow promises a nutritional equivalence to dairy milk. *Ang*, 2013 WL 6492353, at *4. Additionally, no reasonable consumer could be misled by the limited, factually accurate marketing statements made on Blue Diamond's website comparing the calorie and calcium content of Almond Breeze to dairy milk. (*See* FAC, ¶ 3.)

Second, by failing to identify a single Almond Breeze product that she allegedly purchased and by failing to allege any specific representations that she read or relied upon, Plaintiff's claims wholly fail to satisfy Rule 9(b).

Third, Plaintiff's claims are expressly preempted under the FDCA because her complaint seeks to impose new and more stringent labeling requirements on almondmilk manufacturers than are required by the FDA and under the FDCA. Alternatively, Plaintiff's claims should be dismissed or stayed under the primary jurisdiction doctrine because if the appropriate product name for almondmilk is going to be changed, it should be determined in the first instance by the FDA.

Lastly, Plaintiff lacks standing to bring this suit because she has failed to plead a cognizable injury and also lacks standing to seek injunctive relief because she has failed to plead an intent to purchase Blue Diamond's products in the future.

For these reasons, Plaintiff's claims should be dismissed as a matter of law.

## II.   STATEMENT OF FACTS

### A.   Relevant procedural history.

Plaintiff Cynthia Cardarelli Painter ("Plaintiff") filed her initial complaint in this action on January 23, 2017 in the Superior Court for the State of California for the County of Los Angeles. Plaintiff then filed the operative First Amended Class Action Complaint ("FAC") on February 24, 2017. On March 22, 2017, Blue Diamond timely removed Plaintiff's action to this Court (Doc. 1), and the parties

-2-

1  stipulated to a brief extension of time for Blue Diamond to respond to the FAC and

2  also stipulated to a briefing schedule regarding this Motion.  (Doc. 10.)  In

3  accordance with Civil L.R. 7-3, counsel for Blue Diamond conferred with Plaintiff's

4  counsel regarding the substance of this Motion on April 10, 2017.

5          **B.      Plaintiff's factual allegations and causes of action.**

6          Plaintiff seeks to bring claims on behalf of herself and all other persons in the

7  United States who, at any time during the four years prior to the filing of the

8  complaint, purchased any Blue Diamond Almond Breeze Almondmilk products.

9  (FAC, ¶¶ 1, 45.)  Despite presumably seeking to include several different varieties

10  of Almond Breeze Almondmilk products in her lawsuit, Plaintiff fails to identify

11  any specific Almond Breeze product and only generically refers to the products at

12  issue as undefined "Almond Beverages." (*See id.* at ¶¶ 1 n.1, 10, 17 [Plaintiff only

13  alleges that she purchased "several Almond Beverages"].)  The FAC also fails to

14  identify any specific variety of Almond Breeze or cite to any specific labeling

15  statements or Nutrition Facts panel information on the product packaging that the

16  Plaintiff saw or relied upon in allegedly purchasing Blue Diamond's Almond Breeze

17  Almondmilk products.

18          Plaintiff alleges that through its "marketing practices," Blue Diamond

19  purportedly deceived customers into believing that its dairy milk alternative Almond

20  Breeze Almondmilk products were "nutritionally equivalent, and even superior, to

21  dairy milk."  (FAC, ¶ 2.)  According to Plaintiff, Almond Breeze Almondmilk

22  products "lack many of the essential nutrients and vitamins provided in dairy milk,

23  which Defendant fails to disclose to and actively conceals from consumers."  (FAC,

24  ¶¶ 2, 4, 12, 62, 63, 82, 83.)  Plaintiff further alleges that Blue Diamond's Almond

25  Breeze Almondmilk products should be labeled as "imitation milk" under FDA

26  regulations because they are "nutritionally inferior to dairy milk due to the reduction

27  in the content of essential nutrients present in a measurable amount in dairy milk."

28  (FAC, ¶ 5, *see also id.* ¶¶ 6, 32-35.)  Additionally, Plaintiff alleges that under FDA

regulations, Blue Diamond is required to notify customers "of the percentage of the characterizing ingredients of its Almond[milk] [] in comparison to common 'milk.'" (FAC, ¶ 39; *see also id.*, ¶¶ 6-7, 16, 36-38.)  Plaintiff also alleges that she would not have purchased Almond Breeze products, or would have paid less for them, had she known that Almond Breeze Almondmilk was nutritionally inferior to dairy milk. (FAC, ¶¶ 8, 11, 19, 20, 41.)

The crux of Plaintiff's false advertising claim is that by using the term "milk" in the product name Almond Breeze Almondmilk, Blue Diamond deceives consumers into thinking that Almond Breeze Almondmilk is nutritionally equivalent or superior to dairy milk.  (*See* FAC, ¶¶ 2, 3, 6, 7, 37.)  In making this claim, Plaintiff points to the difference between Almond Breeze Almondmilk and the FDA definition of "milk," which is "the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows."  (*Id.*, ¶ 2 & n.2, citing 21 C.F.R. § 131.110.)  Plaintiff's allegations of deception are also based on the following statements allegedly obtained from Blue Diamond's website regarding its Almond Breeze Almondmilk products:[1]

- "Made from real California almonds, Almond Breeze Original is a deliciously creamy alternative to dairy and soymilk. Almond Breeze Original is lactose free, soy free, calcium enriched, and contains only 60 calories per glass—that's half the calories of 2% milk."
- "1 cup of 2% fat dairy milk contains 30% DV calcium vs. 1 cup of Almond Breeze Unsweetened Vanilla Almondmilk contains 45% DV calcium."
- "There may be no such thing as a perfect food, but almonds come in high on the super-food list. A top plant source for **Protein** and **Vitamin E**, almonds also contain fiber, calcium, iron, and other important nutrients."
- "Almond Breeze is an excellent source of Calcium, Vitamin D, and Vitamin E, and a good source of Vitamin A."

---

[1] Absent from the FAC is any information about which website address was visited and the date that the quotations were allegedly copied from the website.  (*See* FAC, ¶ 3.)

13430791.4

1  (FAC, ¶ 3 (emphasis in original).)  Other than these four website statements and the

2  use of the term "milk" on the product labeling, the FAC does not plead any

3  additional statements or representations that allegedly misled the Plaintiff into

4  believing that Almond Breeze Almondmilk was nutritionally equivalent to dairy

5  milk.  Further, nowhere in the FAC does Plaintiff allege that any of the above

6  website statements are false or factually inaccurate in any respect.

7       Plaintiff seeks relief under the following three causes of action: (1) California

8  Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA");

9  (2) California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

10  ("FAL"); and (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code

11  §§ 17500, *et seq.* ("UCL").  (FAC, ¶¶ 1, 53-90.)  Plaintiff alleges that Blue

12  Diamond's conduct is unlawful under the UCL in part because it allegedly violates

13  the FDCA.  (*Id.*, ¶ 86.)  Plaintiff seeks injunctive relief, declaratory relief, damages,

14  disgorgement, attorneys' fees, and costs.  (*Id.*, ¶ 91.)

15  **III.   ARGUMENT**

16      **A.   Plaintiff's UCL, FAL, and CLRA claims fail because Plaintiff has**
         **failed to plead facts sufficient to state a cause of action.**

17

18       Plaintiff's claims under the California consumer protection statutes (UCL,

19  FAL, and CLRA) are governed by the "reasonable consumer" test.  *See, e.g.,*

20  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Under this

21  standard, Plaintiff must "'show that members of the public are likely to be

22  deceived.'"  *Id.* (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).

23  As the Ninth Circuit recently explained, "[t]his requires more than a mere possibility

24  that [the product's] label 'might conceivably be misunderstood by some few

25  customers viewing it in an unreasonable manner.'"  *Ebner v. Fresh, Inc.*, 838 F.3d

26  958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th

27  496, 508 (2003)).  "Rather, the reasonable consumer standard requires a probability

28  'that a significant portion of the general consuming public or of targeted consumers,

acting reasonably in the circumstances, could be misled.'"  *Id.*  The "reasonable consumer" is not the "least sophisticated" or "unwary" consumer.  *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).  The "reasonable consumer" is the "ordinary consumer within the larger population."  *Id.* (quotations and citations omitted).  Moreover, a plaintiff's allegations that he or she was personally deceived are insufficient to show that a reasonable consumer is likely to be deceived.  *Id.*  Here, Plaintiff's FAC has not satisfied the reasonable consumer test, nor can it.

Further, where, as here, "a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."  *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (dismissing UCL, FAL, and CLRA claims where it was "obvious from the product packaging that no reasonable consumer would believe that Cap'n Crunch derives any nutritional value from berries"; *Videtto v. Kellogg USA*, No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086, at *2-3 (E.D. Cal. May 21, 2009) (dismissing UCL, FAL, and CLRA claims where a reasonable consumer would not have believed that "Froot Loops" cereal "contains or is made from actual fruit"); *McKinnis v. Kellogg USA*, No. CV-07-2611 ABC (RCx), 2007 WL 4766060, at *3-5 (C.D. Cal. Sept. 19, 2007) (same); *Ang*, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013) (dismissing UCL, FAL, and CLRA claims where it was implausible that a reasonable consumer might confuse soymilk, almondmilk, and coconut milk with dairy milk because of the word "milk").

Plaintiff's FAC thus fails to meet the basic pleading standard set forth under Federal Rule of Civil Procedure 12(b)(6).  Her complaint is properly subject to dismissal pursuant to Rule 12(b)(6) because it lacks a cognizable legal theory and contains insufficient facts to state a claim upon which relief can be granted.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); Fed. R. Civ. P. 12(b)(6).  Further, her complaint must be dismissed because it does not

-6-

13430791.4

1  "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is

2  plausible on its face.'" *Iqbal v. Ashcroft*, 556 U.S. 662, 663 (2009) (quoting *Bell*

3  *Atlantic Corp. v. Twombly*, 500 U.S. 554, 555 (2007)).

4                **1.**     **The FAC should be dismissed as a matter of law because a**
5                        **reasonable consumer would not be led to believe that the**
                      **term "milk" in "Almondmilk" means that Almond Breeze is**

6                        **nutritionally equivalent to dairy milk.**

7        Plaintiff repeatedly alleges that the use of the word "milk" in the product

8  name Almond Breeze Almondmilk deceives reasonable consumers into believing

9  that Almond Breeze is "nutritionally equivalent, and even superior, to dairy milk,"

10  (FAC, ¶¶ 2, 3, 6, 7, 37.)  Plaintiff is essentially arguing that reasonable consumers

11  cannot distinguish between dairy milk and Almond Breeze Almondmilk products

12  because both products use the word "milk" in their product names.  Plaintiff also

13  alleges that reasonable consumers – despite the existence of clear and accurate

14  ingredient and nutritional information on the Nutrition Facts panels of both dairy

15  milk and Almond Breeze Almondmilk products – are somehow deceived into

16  thinking that Almond Breeze products are nutritionally equivalent to dairy milk

17  products because the word "milk" is contained within the word "almondmilk."

18  These allegations strain the bounds of rationality and are wholly unreasonable.

19        Underscoring the unreasonableness of Plaintiff's allegations, three federal

20  district courts facing similar arguments regarding whether reasonable consumers

21  would be deceived by non-dairy alternative products labeled as "soymilk" or

22  "almondmilk" have dismissed such claims at the pleading stage because no

23  reasonable consumer could plausibly mistake such products as dairy milk from a

24  cow.  *See Gitson II*, 2015 WL 9121232, at *1-2; *Ang*, 2013 WL 6492353, at *3-4;

25  *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 WL 5513711, at *6-7

26  (N.D. Cal. Oct. 4, 2013) ("*Gitson I*").

27        In *Gitson II*, Judge Chabria addressed a nearly identical allegation to the one

28  raised here.  In that case, the plaintiffs claimed that "the word 'soymilk' is

-7-

misleading under [21 U.S.C.] section 343(a) because it implies that the product has a similar nutritional content to cow's milk." 2015 WL 9121232 at *1. The court in *Gitson II* decisively rejected this argument, persuasively reasoning that "***a reasonable consumer (indeed even an unsophisticated consumer would not assume that two distinct products have the same nutritional content; if the consumer cared about nutritional content, she would consult the label***." *Id.* (emphasis added). As *Gitson II* makes clear, no reasonable consumer could plausibly see the product name "Almond Breeze Almondmilk" and assume based solely on the product name that it promised the same nutritional content as the distinct product of dairy milk from a cow.

Similarly, in *Ang*, plaintiffs alleged that the defendant's beverage products were misbranded as "soymilk," "almondmilk," and "coconut milk," because the products were "plant-based, and the FDA defines 'milk' as a substance coming from lactating cows." 2013 WL 6492353 at *1. As here, "[t]he crux of the claims [was] that a reasonable consumer might confuse plant-based beverages such as soymilk or almond milk for dairy milk, because of the word 'milk.'" *Id.* *4. In conclusively rejecting this claim and dismissing plaintiffs' lawsuit, Judge Conti reasoned as follows:

> The Court finds such confusion highly improbable because of the use of the words 'soy' and 'almond.' Plaintiffs essentially allege that a reasonable consumer would view the terms 'soymilk' and 'almond milk,' disregard the first words in the names, and assume the beverages come from cows. The claim stretches the bounds of credulity. Under Plaintiffs' logic, a reasonable consumer might also believe that veggie bacon contains pork, that flourless chocolate cake contains flour, or that e-books are made out of paper.

*Id.* The court further reasoned that the products were not deceptive or misleading because they "clearly convey the basic nature and content of the beverages, while clearly distinguishing them from milk that is derived from dairy cows." *Id.* As Judge Conti concluded in *Ang*, "it is simply implausible that a reasonable consumer

-8-

would mistake a product like soy milk or almond milk with dairy milk from a cow. The first words in the products' names should be obvious enough to even the least discerning of consumers." *Id.*  The same result should be reached in this case.

Lastly, in partially granting defendant's motion to dismiss in *Gitson I*, which also dealt with Trader Joe's soymilk products, Judge Orrick held that where, as here, a dairy alternative product expressly discloses that it is lactose & dairy free, "[i]t is not plausible to claim, as plaintiffs do, that a reasonable consumer would believe that Organic Soy Milk is cow's milk and has the same qualities as cow's milk. . . ." 2013 WL 5513711, at *7.  "In light of this explicit disclaimer, a reasonable consumer could not believe that Organic Soy Milk is cow's milk and has the same qualities as cow's milk." *Id.*  Here, Plaintiff admits, Blue Diamond's Almond Breeze Almondmilk products are expressly advertised as being "lactose free" and as being an "alternative to dairy and soymilk."  (FAC, ¶ 3.)  Therefore, as the court held in *Gitson I*, no reasonable consumer could plausibly believe that Almond Breeze Almondmilk was the same as or nutritionally equivalent to dairy milk given this descriptive language.

In sum, Plaintiff's claims "fail under the reasonable consumer test, as well as the plausibility standard set forth in *Iqbal* and *Twombly*," and must be dismissed. *Ang*, 2013 WL 6492353 at *4.

> **2.**    **The FAC should be dismissed as a matter of law because a reasonable consumer would not be misled by factually accurate comparison statements made between the calcium and calorie content of Almond Breeze and dairy milk.**

Plaintiff further alleges that reasonable consumers would be deceived by Blue Diamond's "marketing practices," including various website statements that make limited and accurate comparisons between the calcium and calorie content of certain varieties of Almond Breeze Almondmilk products as compared to 2% fat dairy milk. (*See* FAC, ¶¶ 2, 3.)  Specifically, Plaintiff references the following truthful and accurate comparison statements from Blue Diamond's website:

-9-

- "Almond Breeze Original is lactose free, soy free, calcium enriched, and contains only 60 calories per glass—that's half the calories of 2% milk."
- "1 cup of 2% fat dairy milk contains 30% DV calcium vs. 1 cup of Almond Breeze Unsweetened Vanilla Almondmilk contains 45% DV calcium."

(*Id.*)  According to Plaintiff, these limited and accurate comparison claims somehow equate to representations that Almond Breeze Almondmilk contains the "same levels of vitamins and nutrients as dairy milk" and would lead reasonable consumers to believe that Almond Breeze is "nutritionally equivalent, and even superior, to dairy milk."  (*See* FAC, ¶¶ 2, 3, 8.)  These claims are nonsensical.

First, it strains credulity to argue that a reasonable consumer could read these factually accurate statements to plausibly mean that all Almond Breeze Almondmilk products contain the same amount of essential vitamins and nutrients as dairy milk across the board.  The only two comparison claims cited by Plaintiff – the calorie and calcium content comparisons quoted above – are discrete, limited, factually accurate statements that provide consumers with truthful information to reference when deciding whether to purchase certain varieties of Blue Diamond's Almond Breeze Almondmilk products.  No reasonable consumer could view these limited and discrete nutritional comparisons and conclude that those representations mean that Almond Breeze is nutritionally equivalent to dairy milk in all respects.  For example,  no reasonable consumer would infer that because Blue Diamond's Original Almond Breeze Almondmilk contains more calcium per serving than 2% fat dairy milk, it also contains the same amount or more of protein, magnesium, phosphorous, potassium, zinc, riboflavin, pantothenic acid, vitamin B6, folate, or vitamin D than dairy milk.  (*See* FAC, ¶ 4.)  However, this is precisely what Plaintiff's FAC alleges. (*See id.*, ¶¶ 3, 4.)  No reasonable consumer could or would make such an unreasonable leap in logic.

Second, Plaintiff has not refuted that the information contained within Blue

-10-

Diamond's website, ingredients lists, Nutrition Facts panels, and product packaging for its Almond Breeze Almondmilk products regarding limited comparison claims to dairy milk is factually accurate.  Without any basis, Plaintiff alleges that Blue Diamond "knew the Almond Beverages did not possess the characteristics and benefits as represented and were not of the particular standard, quality or grade as represented." (FAC, ¶ 59.)  Plaintiff also makes the baseless assertion that Blue Diamond "has committed acts of untrue and misleading advertising by engaging in false representations as to the essential vitamins and nutrients contained in its Almond Beverages." (*Id.*, ¶ 71.)  Neither of these conclusory allegations has any factual support and Plaintiff cites to no false statements of fact or affirmative misrepresentations to support these claims.  Plaintiff does not and could not allege, for example, that the nutrition information is wrong, that the ingredients lists are false in any respect, or that the specifically referenced varieties of Almond Breeze Almondmilk do not possess the calorie and calcium content vis-à-vis 2% fat dairy milk as represented on Blue Diamond's website. (*See* FAC, ¶ 3.)  Thus, because Plaintiff has failed to plead that the nutritional comparisons would be misleading to a reasonable consumer, her claims must be dismissed.[2]

_____

[2] Plaintiff's allegation that Blue Diamond somehow led consumers to believe that Almond Breeze Almondmilk is "nutritionally superior" to dairy milk is also unfounded.  First, there is no nutritional superiority standard to which all consumers adhere.  For example, for lactose intolerant consumers, Almond Breeze Almondmilk could be considered "nutritionally superior" to dairy milk; however, for a consumers with a nut allergy, dairy milk would likely be considered to be "nutritionally superior."  Second, as demonstrated above, Blue Diamond provided consumers with accurate nutritional statements and information on its product labels and website regarding the nutritional content of its Almond Breeze Almondmilk products.  No reasonable consumer could conclude on the basis of the statements cited in the FAC (*see* FAC, ¶ 3), that Blue Diamond ever stated or implied that its Almond Breeze Almondmilk products were nutritionally equivalent, or superior, to dairy milk.

1

2

3

4

**3.**     **The FAC should be dismissed as a matter of law because a reasonable consumer would not be misled by website statements regarding almonds, vitamins in Almond Breeze, and statements that Almond Breeze is an alternative to dairy milk and soymilk.**

5      Plaintiff also points to various website statements regarding the nutritional

6   benefits of almonds, statements that Almond Breeze is an "excellent source" of

7   certain vitamins, and that Almond Breeze is an "alternative to dairy and soymilk."

8   (FAC, ¶ 3.)  Once again, Plaintiff has not refuted the veracity of these statements,

9   and her FAC utterly fails to explain why these truthful statements would – or could

10   – cause a reasonable consumer to believe that Almond Breeze Almondmilk was

11   nutritionally the same as dairy milk.  Indeed, the quoted language from Blue

12   Diamond's website makes clear that Almond Breeze Almondmilk is an "***alternative***

13   to dairy and soymilk;" not that it provides the exact same vitamins and nutrients as

14   dairy milk.  (*See* FAC, ¶ 3.)  No reasonable consumer would be misled into

15   believing that these website statements amount to a promise that Almond Breeze

16   Almondmilk is nutritionally equivalent to dairy milk.

17      As recognized by Judge Chabria in *Gitson II*, it is well-established that

18   "people drink [almondmilk] in lieu of cow's milk;" thus, it is implausible that a

19   website statement specifically promoting Almond Breeze Almondmilk as an

20   alternative to dairy milk could be construed as being misleading to the reasonable

21   consumer about the nutritional content of Almond Breeze Almondmilk.  *Gitson II*,

22   2015 WL 9121232, at *1.  Plaintiff's theory – that consumers see "almondmilk" and

23   assume that it promises the same nutritional benefits as cow's milk – is no more

24   reasonable than consumers complaining that peanut butter doesn't have the same

25   nutritional benefits as butter, or that a "veggie burger" doesn't offer the same

26   nutritional content as beef.  Because Plaintiff has failed to plead facts sufficient to

27   show that a reasonable consumer could plausibly be misled by Blue Diamond's

28   website and labeling statements regarding the nutritional content of its Almond

-12-

13430791.4

1   Breeze Almondmilk products, her UCL, FAL, and CLRA claims should be

2   dismissed as a matter of law.  *See, e.g., Ang*, 2013 WL 6492353 at *4.

### 4.   Blue Diamond did not have a duty to disclose each nutritional difference between Almond Breeze Almondmilk and dairy milk.

5          Plaintiff appears to allege that because Blue Diamond makes some

6   comparison statements between its Almond Breeze Almondmilk products and dairy

7   milk (*i.e.,* the factually accurate, discrete calorie and calcium comparisons discussed

8   above), it is deceptive for Blue Diamond not to disclose to consumers *every single*

9   *nutritional difference* between its Almond Breeze Almondmilk products and dairy

10  milk.  (*See* FAC, ¶¶ 2, 4, 16(b), 91(c)(ii).)  This allegation is wholly unsupported

11  under the law.  Food manufacturers do not owe a legal duty to provide consumers

12  with detailed comparisons of the nutritional content of their products as compared to

13  other products.  If Plaintiff wanted to know what the nutritional differences were

14  between Almond Breeze Almondmilk and dairy milk, she easily could have

15  compared the factually accurate ingredient lists and Nutrition Facts panels of the

16  products, or conducted a simple internet search.  *See, e.g., Gitson II*, 2015 WL

17  9121232, at *1 (holding that no reasonable consumer could plausibly mistake

18  soymilk for cow's milk and reasoning that "***if the consumer cared about nutritional***

19  ***content, she would consult the label***") (emphasis added)).  This information was

20  readily available to Plaintiff and other consumers on the Nutrition Facts panels of

21  the products; Plaintiff's failure to seek out such basic and readily accessible

22  information is telling.

23          Citing to governmental dietary guidelines, Plaintiff also alleges that Blue

24  Diamond's failure to supplement its Almond Breeze Almondmilk products with all

25  of the nutrients found in dairy milk "poses a serious health concern to consumers."

26  (FAC, ¶ 10 & n.8.)  However, the guidelines cited do not impose any legal duties or

27  requirements on food manufacturers to label their products in any particular manner;

28  rather, they exist solely to assist the public in making healthy eating choices.  (*See*

-13-

13430791.4

1  *id.*)  Plaintiff fails to cite any legal authority to support the argument that Blue

2  Diamond is required to label its Almond Breeze Almondmilk products to list all of

3  the nutritional differences between almondmilk and dairy milk, nor is Blue Diamond

4  aware of any applicable authority.  Further, Plaintiff's bare allegation that

5  almondmilk poses a serious health risk to consumers is completely unsupported by

6  facts and baseless.

7         Blue Diamond did not have a duty to disclose each and every nutritional

8  difference between Almond Breeze Almondmilk and dairy milk because there were

9  no safety concerns arising from the failure to distinguish every element of dairy

10 milk, and Blue Diamond never affirmatively represented that its Almond Breeze

11 products were nutritionally equivalent to dairy milk in all respects.  *See, e.g., Wirth*

12 *v. Mars, Inc.*, No. SA CV 15-1470-DOC (KESx), 2016 WL 471234, at *3-6 (S.D.

13 Cal. Feb. 5, 2016) (holding no duty to disclose allegedly omitted information in the

14 context of UCL, FAL, and CLRA claims where there was no affirmative

15 misrepresentation and where there were no safety issues stemming from the

16 omission).  Because Blue Diamond was under no duty to disclose every nutritional

17 difference or distinction between Almond Breeze Almondmilk and dairy milk,

18 Plaintiff cannot base her claims on the absence of such information – especially

19 since the labels already accurately disclose the ingredients and nutrition facts of

20 each product.

21         **B.     Plaintiff's causes of action are not pled with the requisite
               particularity under Rule 9(b).**

22

23         Plaintiff's claims are deficient for the separate and independent reason that

24 they fail to satisfy the particularity requirements of Federal Rule of Civil Procedure

25 9(b).  Because Plaintiff's UCL, FAL, and CLRA claims sound in fraud (*i.e.,*

26 deceptive or misleading advertising), they must be pled with particularity under

27 Rule 9(b).  *See, e.g., Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.

28 2003) (applying Rule 9(b) to UCL, FAL, and CLRA claims where such claims were

-14-

1  grounded or sound in fraud); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120,

2  1125 (9th Cir. 2009) (same).  To satisfy Rule 9(b), the complaint must provide the

3  time, place, and content of the alleged fraudulent representation or omission – "the

4  who, what, when, and how" – as well as the circumstances showing reliance on the

5  alleged fraudulent conduct.  *Vess*, 317 F.3d at 1106 (citations and internal quotations

6  omitted).  The complaint also must set forth "what is false or misleading about a

7  statement, and why it is false."  *Id.* Plaintiff's FAC falls well short of meeting this

8  standard.

9       First, Plaintiff fails to identify a single, specific Almond Breeze Almondmilk

10  product that she allegedly purchased.  (*See* FAC, ¶¶ 1 n.1, 17.)  In fact, all that is

11  alleged in the FAC and Plaintiff's attached declaration is that: (1) "Plaintiff

12  purchased several Almond Beverages on numerous occasions from Costco stores in

13  Los Angeles" (FAC, ¶ 17); and (2) "I purchased Almond Breeze Almond Milk

14  throughout the past 12 months at Signal Hill Costco, which is one of the products at

15  issue in this action."  (Painter Decl., ¶ 4.)  "Almond Breeze Almond Milk,"

16  however, is not a specific almondmilk product manufactured by Blue Diamond;

17  rather, Blue Diamond sells several different varieties of its Almond Breeze

18  Almondmilk products, such as Original, Unsweetened Vanilla, etc. (*see* specific

19  products referenced in Blue Diamond's website statements quoted in ¶ 3 of the

20  FAC).  Therefore, based on the FAC, Blue Diamond has no information regarding

21  what Almond Breeze product(s) Plaintiff allegedly purchased.  Plaintiff's failure to

22  specifically plead which Almond Breeze Almondmilk product she allegedly

23  purchased renders her UCL, FAL, and CLRA claims woefully deficient under Rule

24  9(b).

25       Second, with the exception of the two website comparison statements

26  regarding Almond Breeze Original and Unsweetened Vanilla Almondmilk (FAC,

27  ¶ 3) and a chart purporting to contain some information regarding the nutritional

28  content of Almond Breeze Original Almondmilk (*id.*, ¶ 4), Plaintiff has failed to

-15-

provide any information whatsoever regarding any of the Almond Breeze Almondmilk products that are the subject of her lawsuit (*i.e.,* product labels, descriptions, or nutritional information).  Absent specific information regarding the specific product allegedly purchased, Plaintiff's FAC is deficient under Rule 9(b).  For example, the FAC contains allegations that "Blue Diamond has labeled its products to highlight its low calorie and fat content as compared to 2% fat dairy milk" (FAC, ¶ 7); however, Plaintiff does not tie that allegation to any specific Almond Breeze Almondmilk product.  Nor does Plaintiff identify any specific labeling statements.  This lack of specificity clearly runs afoul of Rule 9(b).

Further illuminating the procedural deficiencies with Plaintiff's FAC is the telling allegation that "[o]n information and belief, every Almond Beverage at issue in this complaint has the same nutritional content and contains the same deceptive misrepresentations employed by Blue Diamond."  (FAC, ¶ 10.)  Plaintiff's assumptions, however, do not satisfy her pleading burden under Rule 9(b) and are belied by the fact that there are several different varieties of Almond Breeze Almondmilk products with different calorie and fat contents.  Moreover, the FAC does not contain a single allegation regarding what specific "misrepresentations" (*i.e.,* website statements, advertising, labels, product packaging, or nutritional information) that Plaintiff allegedly read, relied upon, and was misled by.  (*See* FAC, ¶¶ 18-19.)  The FAC only contains generic allegations that Plaintiff relied on "claims comparing Almond Beverages' nutritional contents to dairy milk[,]" but does not ever state which specific statements Plaintiff saw or relied upon and when or where she saw such statements.  (*Id.*)  Plaintiff's allegations thus fail to satisfy Rule 9(b).  *See, e.g., Rojas v. General Mills, Inc.*, No. 12-cv-05099-WHO, 2009 WL 5568389, at *7 (N.D. Cal. Oct. 9, 2013) ("Because [plaintiff] fails to state where he saw such advertisements or when he visited General Mills' website, let alone relied upon and were misled by them, he does not sufficiently plead his claims under Rule 9(b)"; *see also Thomas v. Costco Wholesale Corp.*, 12-cv-02908 EJD, 2013 WL

-16-

13430791.4

1435292, at *6-9 (N.D. Cal. Apr. 9, 2013) (dismissing claims as to unspecified products where the allegations "do not provide a clear and unambiguous account of the allegedly fraudulent, deceptive, or misrepresentative statements with the specificity and particularity required by Rule 9").

In sum, Plaintiff has failed to plead with particularity: (1) which specific Almond Breeze Almondmilk products she believed were "nutritionally equivalent" to dairy milk; (2) what representations she saw, read, and relied upon in deciding to purchase Blue Diamond's Almond Breeze products; (3) what was misleading about those specific, material representations; and (4) which specific Almond Breeze Almondmilk product(s) she purchased.  (*See, e.g., Vess*, 317 F.3d at 1106.)  Because Plaintiff's entire case is predicated on the allegation that she was allegedly deceived into believing that Almond Breeze Almondmilk was "nutritionally equivalent and, even superior, to dairy milk" (FAC, ¶ 2), she must plead sufficiently particular facts. Plaintiff's complete lack of specificity in pleading her UCL, FAL, and CLRA claims renders the FAC fatally deficient under Rule 9(b).  *See Kearns*, 567 F.3d at 1126.

### C.   Plaintiff's claims are expressly preempted by federal law.

Plaintiff's claims should also be dismissed because they are expressly preempted by the FDCA to the extent that Plaintiff attempts to use California's consumer protection statutes (UCL, FAL, and CLRA) to impose new and different labeling requirements on plant-based beverage products such as almondmilk. Specifically, Plaintiff demands that Blue Diamond: (1) revise its Almond Breeze Almondmilk labels to label the products as "imitation milk;" (2) revise its labels to exhaustively list all of the nutritional comparisons between Almond Breeze Almondmilk and dairy milk; (3) fortify its products to conform more closely to the nutritional content of dairy milk; or (4) refrain from using "milk" in connection with its Almond Breeze Almondmilk products.  (FAC, ¶¶ 2, 5, 6, 15, 16, 29, 30, 32, 34, 37, 91(c).)  Plaintiff's attempt to impose new labeling requirements for almondmilk products through the auspices of California law improperly circumvents the FDCA

-17-

1    and the FDA's authority to regulate food labeling.

2          Under the Supremacy Clause, Congress has the power to preempt state law.

3    *See, e.g., Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

4    "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-

5    empts state law; (2) state law actually conflicts with federal law; or (3) federal law

6    occupies a legislative field to such an extent that it is reasonable to conclude that

7    Congress left no room for state regulation in that field."  *Chae v. SLM Corp.*, 493

8    F.3d 936, 941 (9th Cir. 2010).  Through the FDCA, the Nutritional Labeling

9    Education Act of 1990 ("NLEA"), and the regulations promulgated thereunder, 21

10   C.F.R. §§ 1.1, *et seq.*, Congress and the FDA have created a comprehensive and

11   uniform system for food labeling.  This system is designed to ensure that food is

12   safe and labeled so as not to mislead consumers.  Only the federal government, with

13   few exceptions not relevant here, has the authority to enforce these laws.  *See* 21

14   U.S.C. § 337.

15         Through the FDCA and NLEA, Congress expressly preempts any state from

16   requiring any food labeling that differs in any respect from the requirements set

17   forth in the FDCA and its implementing regulations.  Specifically, 21 U.S.C. § 343-

18   1 provides, in relevant part, that "[n]o State . . . may directly or indirectly establish

19   under any authority . . . any requirement for the labeling of a food of the type"

20   regulated by federal law "that is not identical to the [federal] requirement.

21   Therefore, where state law requires anything different from or in addition to the

22   FDA's labeling requirements, that state law is preempted by the FDCA.  *Id.*; 21

23   C.F.R. § 100.1(c); *Pom Wonderful LLC v. Coca-Cola Co.*, No. CV 08-06237, 2013

24   WL 543361, at *3 (C.D. Cal. Feb. 13, 2013).  For the reasons discussed below,

25   Plaintiff's FAC is preempted because Plaintiff asks the Court to entertain the notion

26   that California law may require labeling practices different from, in addition to, and

27   inconsistent with those prescribed by the FDA.

28         To support her claims that she was allegedly deceived by Blue Diamond's

-18-

1   "marketing practices" and to support her demands for more stringent labeling

2   requirements, Plaintiff's FAC points to the differences between Almond Breeze

3   Almondmilk and the FDA's standard of identity for "milk." (FAC, ¶ 2 & n.2.)

4   Under FDA regulations, "milk" is defined as the "lacteal secretion, practically free

5   from colostrum, obtained by the complete milking of one or more healthy cows."

6   (*Id.*, citing 21 C.F.R. § 131.110.) Clearly, Almond Breeze Almondmilk is not

7   required to comply with the FDA's standard of identity for milk—it is not cow's

8   milk. In rejecting identical claims in *Ang*, Judge Conti cogently explained that the

9   FDA's standard of identity for milk "*pertains to what milk is*, rather than what it is

10  not, and makes no mention of non-dairy alternatives such as the [defendant's

11  soymilk, almondmilk, and coconut milk products]." *Ang*, 2013 WL 6492353, at *3

12  (emphasis added).

13       Because the FDA has not prescribed a standard of identity for products like

14  Almond Breeze Almondmilk, the "common or usual name" for those products

15  governs. *See* 21 U.S.C. § 343(i). Pursuant to FDA regulations, the common or

16  usual name of a food "shall accurately identify or describe, in as simple terms as

17  possible, the basic nature of the food or its characterizing properties or ingredients."

18  21 C.F.R. § 102.5(a). Further, as the court in *Ang* previously held, "soymilk,"

19  "almondmilk," and "coconut milk" are the common or usual names for these types

20  of plant-based beverages, and "clearly convey the basic nature and content of the

21  beverages, while clearly distinguishing them from milk that is derived from dairy

22  cows." *Ang*, 2013 WL 6492353, at *4.[3] Thus, "almondmilk" is the common or

23  usual name for the Almond Breeze products.

24  _____

25  [3] In addition, multiple administrative agencies now recognize "almondmilk" as an

26  accurate name for these products, including the U.S. Patent and Trademark Office
    (*https://tmidm.uspto.gov/modules/viewRecordPrint.html?referrer=public&recordId*

27  *=60209*, and the USDA nutrient database

28  (https://ndb.nal.usda.gov/ndb/foods/show/4188).

1    Moreover, as the court in *Gitson II* recognized, "the fact that FDA has
2    standardized milk does not categorically preclude a company from giving any food
3    product a name that includes the word 'milk.'  Rather . . . the standardization of milk
4    simply means that a company cannot *pass off* a product as 'milk' if it does not meet
5    the regulatory definition of milk."  2015 WL 9121232, at *2 (emphasis in original).
6    Here, just like Trader Joe's in *Gitson II* with respect to its soymilk products, Blue
7    Diamond has not attempted to pass off its Almond Breeze Almondmilk products as
8    dairy milk from cows by calling the products "almondmilk."  *Id.*  To the contrary, as
9    Plaintiff herself recognizes, Blue Diamond markets its Almond Breeze products as a
10   non-dairy alternative for consumers to purchase in lieu of dairy milk.  (*See* FAC,
11   ¶ 3.)

12    As the relevant case law makes clear, the name "almondmilk" does not
13   constitute a violation of the standard of identity of dairy milk under the FDCA.  *See*
14   *Ang,* 2013 WL 6492353, at *3-4; *Gitson II*, 2015 WL 9121232, at *1-2.  Further,
15   under the FDCA and its implementing regulations, Almond Breeze Almondmilk
16   products are appropriately identified as "almondmilk" because that is the common
17   or usual name for these products. 21 C.F.R. § 101.3(b)(1)-(3); *see also Ang*, 2013
18   WL 6492353, at *4.  As the court in *Gitson II* recognized, "[t]he threshold question
19   in this case . . . is whether the use of the word 'soymilk' in the Trader Joe's products
20   could conceivably violate the federal [FDCA].  The answer to that question is no."
21   2015 WL 9121232, at *1.  The same conclusion applies to Blue Diamond's use of
22   the word "almondmilk" on its Almond Breeze products.

23    Plaintiff's demand that Blue Diamond remove the word "milk" from its
24   Almond Breeze products (FAC, ¶¶ 16(d), 91(c)(iv)) is therefore inconsistent with
25   current FDCA requirements.  Further, Plaintiff's demand that Blue Diamond include
26   comprehensive nutrition comparisons between Almond Breeze Almondmilk and
27   dairy milk on its product packaging (FAC, ¶¶ 16(b), 91(c)(ii)) is also not required
28   under the FDCA or its implementing regulations.  Lastly, Plaintiff's demand that

-20-

Blue Diamond label its Almond Breeze Almondmilk products as "imitation milk" also conflicts with FDCA requirements because: (1) almondmilk is the common or usual name for these products as established above; and (2) the products are not being sold as imitation milk.  (FAC, ¶¶ 5, 6, 16(a), 32, 34, 35, 39, 91(c)(1).)  Like bread products that do not conform to FDA's standard of identity for bread (i.e., rye bread and cornbread) (21 C.F.R. § 136.110) and other alternatives to cow's milk that do not meet the standard of identity for "milk" (i.e., goat milk or sheep milk (21 C.F.R. §131.110), Almond Breeze Almondmilk products are not "imitation" products and are not required to be labeled as such.

In sum, there is no legal basis under federal or state law to require Blue Diamond to relabel its Almond Breeze Almondmilk products in the manner suggested by Plaintiff.  In fact, such suggested requirements go beyond those requirements imposed by the FDA under the FDCA and, therefore are preempted by the FDCA.  Thus, Plaintiff's efforts to impose new and different food labeling requirements through her UCL, FAL, and CLRA causes of action are improper and should be rejected.

**D.     The primary jurisdiction doctrine also bars Plaintiff's claims.**

In the alternative to dismissal on preemption grounds, this Court should dismiss or stay Plaintiff's claims under the primary jurisdiction doctrine.  Primary jurisdiction is a prudential doctrine under which "a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed by the agency with regulatory authority over the relevant industry rather than the judicial branch."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  It applies "where there is: (1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."  *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775,

-21-

13430791.4

1  780 (9th Cir. 2002).

2          Here, Plaintiff's claimed deception rests almost exclusively on her erroneous

3  interpretation of FDA food labeling requirements and regulations as they pertain to

4  almondmilk.  Indeed, the thrust of Plaintiff's FAC is to ask this Court to step into

5  the shoes of the FDA and require all almondmilk manufacturers to change the

6  established standard of identity for almondmilk products and impose new and more

7  stringent labeling requirements on these products.  (*See* FAC, ¶¶ 16, 91.)  However,

8  the standards of identity for food products are determined by the FDA, not by

9  private litigants.  *See* 21 C.F.R. § 101.3; 21 U.S.C. § 343-1(a).  Therefore, to the

10  extent that there is any dispute as to the FDA's position on the standard of identity

11  and labeling requirements for almondmilk, such disputes must be resolved by the

12  expert agency, the FDA, rather than this Court.  *See, e.g., Gordon v. Church &*

13  *Dwight Co.*, No. C-09-5585-PJH, 2010 WL 1341184, at *1-2 (N.D. Cal. Apr. 2,

14  2010) (dismissing plaintiff's UCL, FAL, and CLRA claims under the primary

15  jurisdiction doctrine because it would be "inappropriate for th[e] court to assume the

16  FDA's regulatory role").  To allow Plaintiff to fundamentally change the labeling

17  requirements and standard of identity for plant-based beverages through this

18  litigation would usurp the FDA's unique authority and expertise to interpret and

19  enforce the FDCA and its implementing regulations.  Moreover, labeling

20  requirements for plant-based beverage present "a particularly complicated issue that

21  Congress has committed to a regulatory agency," the FDA, and "protection of the

22  integrity of [the] regulatory scheme [of uniform food labeling laws] dictates [that]

23  preliminary resort to the agency which administers the scheme" is appropriate.

24  *Clark*, 523 F.3d at 1114 (internal citations and quotation marks omitted).  Thus, in

25  deference to the FDA, the Court should exercise its discretion and dismiss or stay

26  Plaintiff's FAC on the alternative ground that it falls within the ambit of the primary

27  jurisdiction doctrine.

28

**E.     Plaintiff lacks standing to bring this lawsuit and maintain her claim for injunctive relief.**

Plaintiff's FAC is also subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) because she has failed to establish Article III standing. *See, e.g.*, *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish standing under Article III of the Constitution, a plaintiff must have suffered an injury-in-fact, which consists of (1) a concrete and particularized injury; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In order to satisfy these requirements, Plaintiff "'must demonstrate that [s]he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [s]he will be wronged in a similar way.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). In addition, "to establish standing under the UCL, FAL, and CLRA a person must have suffered an injury in fact and ha[ve] lost money or property as a result." *Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1315 (E.D. Cal. 2014); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322-23 (2011). Stated differently, to establish standing for her three causes of action, Plaintiff must have: "(1) expended money due to defendant's acts . . .; (2) lost money or property; or (3) been denied money to which . . . she has a cognizable claim." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010) (citations omitted). Here, Plaintiff has failed to plead facts sufficient to show that she suffered a cognizable injury or that she has standing to seek injunctive relief.

First, Plaintiff's FAC fails to plead a cognizable injury-in-fact because the labels, product packaging, website statements, and nutritional information accurately described what Plaintiff was receiving in exchange for her money. In allegedly purchasing an unspecified Almond Breeze Almondmilk product, Plaintiff

-23-

1   received exactly what the product was advertised to be: almondmilk.  Plaintiff has

2   not alleged that any Almond Breeze Almondmilk products were not labeled with

3   accurate ingredient lists or that the nutritional information contained on the

4   Nutrition Facts panels of the Almond Breeze products were in any way false or

5   inaccurate.  Indeed, if Plaintiff in fact purchased an Almond Breeze Almondmilk

6   product, she received a product that possessed all of the nutritional benefits that

7   were disclosed on the product packaging and on Blue Diamond's website.  None of

8   the specific website statements identified in the FAC (*see* ¶ 3) purport to present

9   Almond Breeze Almondmilk as anything other than what it is, an "alternative to

10  dairy milk."  *See, Kwikset*, 51 Cal.4th at 330 (a consumer who relies on a

11  misrepresentation in purchasing a product establishes economic injury if he or she

12  shows that the product purchased was different than what it was represented to be).

13  Here, there is no showing that Plaintiff received a different product than was

14  advertised to her.  Therefore, she has failed to establish a cognizable injury.

15          Second, as set forth above, Blue Diamond did not have any duty to disclose

16  every nutritional distinction between its Almond Breeze Almondmilk products and

17  dairy milk.  Therefore, Plaintiff could not have relied on Blue Diamond's purported

18  failure to disclose that information to establish a cognizable injury under the UCL,

19  FAL, or CLRA.  *See Wirth*, 2016 WL 471234, at *3-6 (holding that "because

20  Defendants had no duty to disclose the [information] on their product labels,

21  Plaintiffs could not have relied on Defendant's failure to disclose that

22  information.").

23          Third, because Plaintiff has failed to plead that she intends to purchase any

24  Almond Breeze Almondmilk products in the future, she cannot establish standing to

25  pursue her injunctive relief claims (*see* FAC, ¶ 93(c)) because she cannot establish a

26  likelihood of future harm.  *See, e.g., Delarosa v. Boiron, Inc.*, No. SACV 10-1569-

27  JST (CWx), 2012 WL 8716668, at *2-6 (C.D. Cal. Dec. 28, 2012); *Mason v.*

28  *Nature's Innovation, Inc.*, No. 12CV3019 BTM, 2013 WL 1969957, at *2-5 (S.D.

-24-

13430791.4

1  Cal. May 13, 2013) (plaintiff lacked standing because it was "apparent that [he]

2  ha[d] no intention of buying [d]efendant's skin tag removal product again in the

3  future"); *Duran v. Creek*, No. 3:15-cv-05497-LB, 2016 WL 1191685, at *7 (N.D.

4  Cal. Mar. 28, 2016).

5  **IV.   CONCLUSION**

6       For the foregoing reasons, Blue Diamond respectfully requests that the Court

7  dismiss Plaintiff's FAC in its entirety, with prejudice.

8

9  Dated: April 17, 2017              HANSON BRIDGETT LLP

10

11

12                   BY: /s/ *Lawrence M. Cirelli*

13                     LAWRENCE M. CIRELLI

13                     MEGAN OLIVER THOMPSON

14                     GEOFFREY R. PITTMAN

14                     Attorneys for Defendant Blue Diamond

15                     Growers

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT

## PROOF OF SERVICE

**Cynthia Cardarelli Painter v. Blue Diamond Growers, et al.**
**U.S.D.C. Central District of California, Case No. 2:17-cv-02235 SVW (AJWx)**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of San Francisco, State of California.  My business address is 425 Market Street, 26th Floor, San Francisco, CA 94105.

On April 17, 2017, I served true copies of the following document(s) described as **DEFENDANT BLUE DIAMOND GROWERS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

| | |
|---|---|
| Lee A. Cirsch | Attorneys for Plaintiff, Cynthia |
| Robert K. Friedl | Cardarelli Painter |
| Trisha K. Monesi | |
| Capstone Law APC | |
| 1875 Century Park East, Suite 100 | |
| Los Angeles, CA 90067 | |
| PH:  310-536-4811 | |
| Email: | |
| Lee.Cirsch@capstonelawyers.com | |
| | |
| Robert.Friedl@capstonelawyers.com | |
| | |
| Trisha.Monesi@capstonelawyers.com | |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 17, 2017, at San Francisco, California.

/s/ Lawrence M. Cirelli
Lawrence M. Cirelli

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT

13430791.4